UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re:*

MICHAEL D. BARNETT and DENISE A BARNETT,

Debtors.

No. 16-cv-436 (NSR)

OPINION & ORDER

MARK S. TULIS, Chapter 7 Trustee of the Estate of
Denise A. Barnett,

Plaintiff,

-against-

M.E.-R.E. HOLDING LLC and
ALEXANDER GELLATLY

Defendants.

NELSON S. ROMÁN, United States District Judge

Alexander Gellatly ("Gellatly") submits the current motion seeking leave to appeal the
United States Bankruptcy Court for the Southern District of New York's (the "Bankruptcy
Court") order of December 29, 2015 (the "December Order"). *In re Barnett*, No. 14-09036
(CGM), ECF No. 63. For the reasons set forth below, the motion for leave to appeal is DENIED.

## BACKGROUND

In September 2010, Gellatly entered into five purchase agreements with Debtor Denise
A. Barnett. Pursuant to the agreements, Ms. Barnett agreed to sell Gellatly interest in five LLCs,
and, in exchange, Gellatly signed five promissory notes payable in May 2013 (the "Notes"). It
was intended that the LLCs would construct residential housing facilities in the Hudson Valley,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/18/2016

and the agreements were expressly conditioned upon the receipt of HUD financing for the developments (the "Projects").

In the spring of 2011, Ms. Barnett borrowed $500,000 from Wallkill Federal Savings & Loan Association ("Wallkill") and executed pledge agreements pledging the Notes, payable to Ms. Barnett, as security for the loan from Wallkill.  In connection with Ms. Barnett's loan, Gellatly signed a series of estoppel certificates acknowledging his liability under the Notes and waiving defenses to the Notes.

In November 2012, Michael and Denise Barnett (the "Debtors") filed their joint Chapter 7 bankruptcy petition.  By that time, three of the Projects were abandoned, one was in foreclosure, and the last one had been taken over by HUD.  During the bankruptcy proceeding, the Trustee of the Barnett estate entered into an agreement with Wallkill whereby Wallkill delivered the Notes to the Trustee, and the Trustee agreed to sue Gellatly.  Any proceeds recovered on the Notes would first be remitted to the Bank, and the Trustee would receive and administer any excess proceeds.  On October 22, 2014, the Trustee commenced Adversary Proceeding No. 14-09036 against Gellatly.

## STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(3), "with leave of the court," district courts have jurisdiction to hear appeals from "interlocutory orders and decrees" of the bankruptcy courts.  28 U.S.C. § 158(a)(3).  To determine whether leave to appeal should be granted, district courts apply the standards prescribed in 28 U.S.C. § 1292(b).  *See In re Kassover*, 343 F.3d 91 (2d Cir. 2003); *In re Enron Corp.*, No. 01–16034, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).  A court may certify for interlocutory appeal an order that involves (1) a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal

from which may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The moving party has the burden of establishing all three elements. *See Casey v. Long Island R.R.*, 406 F.3d 142, 146 (2d Cir. 2005). The conditions create a significant hurdle to § 1292(b) certification, "since 'the power [to grant an interlocutory appeal] must be strictly limited to the precise conditions stated in the law.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (citing *Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)). Even when the statutory criteria are met, "[d]istrict court judges have broad discretion to deny certification." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370–71 (S.D.N.Y. 2008) (quoting *SPL Shipping Ltd. v. Gujarat Cheminex Ltd*., No. 06-cv-15375 (KMK), 2007 WL 1119753, at *1 (S.D.N.Y. Apr. 12, 2007) (quoting *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc*., 71 F. Supp. 2d 139, 166 (E.D.N.Y. 1999) (stating that the authority to deny certification, even where the three statutory criteria are met, is "independent" and "unreviewable") (internal citation omitted)).

Moreover, interlocutory appeals are strongly disfavored in federal practice. *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010). Movants cannot invoke the appellate process "as a vehicle to provide early review of difficult rulings in hard cases." *In re Levine,* No. 94–44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (internal citations omitted).

For these reasons, and because a basic tenet of federal law is to delay appellate review until a final judgment, § 1292(b) certification should be "rare." *Koehler v. Bank of Bermuda Ltd*., 101 F.3d 863, 865 (2d Cir. 1996). Certification should be reserved for "exceptional" cases, for example, where an immediate appeal would avoid protracted litigation. *Id.* at 865–66. *See*

*also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529–30 (S.D.N.Y. 2014) *(quoting McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.) ("[O]nly exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.").

## DISCUSSION

Gellatly urges the Court to certify for appeal the question of whether the Trustee, as assignee, has standing to enforce a third party creditor's claims. As stated above, leave to appeal interlocutory orders should be granted "only if the order '(1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Quigley Co., Inc.*, 323 B.R. 70, 77 (S.D.N.Y. 2005) (quoting *In re Enron Corp.*, 316 B.R. 767, 771-72 (S.D.N.Y. 2004)).

Turning to the first prong, a "'controlling question of law' is one in which either '(1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation.'" *In re China Med. Techs., Inc.*, No. 12-13736, 2013 WL 6667789, at *10 (S.D.N.Y. Dec. 17, 2013) (quoting *In re Futter Lumber Corp.*, 473 B.R. 20, 27 (E.D.N.Y. 2012) (quoting *N. Fork Bank v. Abelson*, 207 B.R.382, 389 (E.D.N.Y. 1997)). "The question of law must be a pure question of law that can be decided quickly and cleanly without detailed study of the record." *In re China Med. Techs., Inc.*, 2013 WL 6667789, at *10 (citation omitted). Additionally, the "'legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law.'" *Id.* (quoting *In re Fosamax Prods. Liab. Litig.*, 2011 WL 2566074, at *4 (S.D.N.Y. June 29, 2011)). Simply

put, "interlocutory appeal is not appropriate where a legal issue is essentially fact based in nature." *Id*. (citation omitted).

Gellatly contends that the issue as to whether the Trustee has standing to enforce the Notes as assignee of Wallkill is a controlling question of law.  In the December Order, the Bankruptcy Court first concluded that the Trustee, "as the representative of Ms. Barnett's estate, has standing to enforce Ms. Barnett's right to payment on the Notes."  (December Order at 13.) The Bankruptcy Court next determined that the "Trustee has standing to assert Wallkill's claim to payment on the Notes, as it is properly a claim of the Debtors' bankruptcy estate."  (*Id*. at 15.) Gellatly does not dispute that the Trustee has standing as a representative of the Barnett estate to enforce *Barnett's* claim; however, he does dispute the Trustee's standing to enforce *Wallkill's* claim.

In *Caplin v. Marine Midland Grace Trust Company of New York*, the Supreme Court held that a trustee lacked standing to pursue claims on behalf of debenture holders because (1) no statutory provision permits a trustee to sue on behalf of creditors of the estate, (2) the debenture holders were in a position to assess for themselves whether to initiate litigation, and (3) in light of the fact that the debenture holders would not be bound by the trustee's litigation, they would be allowed to sue the debtor directly and create the possibility of duplicate, protracted litigation. 406 U.S. 416, 422–34 (1972).  Courts have not interpreted *Caplin* as a *per se* rule rejecting standing in every instance in which a bankruptcy trustee seeks to sue on an assigned creditors' claims; rather, courts focus on whether the trustee is seeking to recover primarily for the estate or the third-party creditors.  In *Kalb, Voorhis & Co. v. American Financial Corp.*, the Second Circuit held that the bankruptcy trustee had standing to assert veil-piercing claims because it was seeking "to recover property of the estate rather than property belonging to creditors."  8 F.3d

130, 134 (2d Cir. 1993).  Similarly, in *Taberna Capital Management, LLC v. Jaggi*, Judge Cote

held that the litigation trustee had standing to sue on claims formally assigned to it by the

creditors because it was "acting on behalf of the bankruptcy estate" and was the "real party in

interest."  No. 08-cv-11355 (DLC), 2010 WL 1424002, at *3 (S.D.N.Y. Apr. 9, 2010).

     Additionally, the Fourth Circuit, in *In re Bogdan*, distinguished the facts of the case from

*Caplin* in three ways, concluding that the trustee had standing because it sought primarily to

recover for the estate.  First, the court noted that "[b]y taking unconditional assignments from the

creditors, the trustee, as assignee, is making his claim on behalf of [the estate], not on behalf of

the [creditors]."  414 F.3d 507, 511 (4th Cir. 2005).  The creditors' recovery would be treated

like every other creditor of the estate.  *Id*.  Second, the court noted that "unlike the debenture

holders in *Caplin,* the [creditors] in this case have affirmatively elected how best to deal with

their claims . . . .  By unconditionally assigning their claims to the trustee, the [creditors] have

decided to abandon their claims against the alleged coconspirators to allow the trustee to seek

recovery against them on behalf of the estate."  *Id*. at 412.  Third, the court noted that there was

"no potential for duplicative and inconsistent litigation" by virtue of the creditors' unconditional

assignment of their claims.  *Id*.  Accordingly, there is established case law that a trustee has

standing to sue on assigned claims where it seeks to recover primarily for the benefit of the estate

and is the real party in interest.

     In the instant case, Chief Judge Morris concluded that the Trustee has standing to enforce

the Notes as assignee of Wallkill because it is primarily seeking to recover for the benefit of the

Barnett estate.  First, Judge Morris noted that "Wallkill validly and completely assigned its

security interest in the Notes to the Trustee after the filing of the Debtors' bankruptcy petition."

(December Order at 14.)  The Trustee gave consideration to Wallkill in exchange for the

6

assignment and agreed to pay Wallkill a sum of money recovered out of the litigation against Gellatly. (*Id*.) Next, Judge Morris noted that the "Trustee is primarily seeking to enforce the Notes for the benefit of the estate." (*Id*. at 15.) Because the total amount due on the Notes is $1,900,000.00 and Wallkill is owed only $463,913.10, even though Wallkill is to be paid first on the recovery from the litigation against Gellatly, the majority of the recovery goes to the Barnett estate. (*Id*.) The assignment of Wallkill's claims to the Trustee allows the Trustee to collect the assets of the estate for the benefit of the estate. (*Id*.)

Though Gellatly attempts to frame his challenge as one involving a controlling question of law, upon closer review, it appears that Gellatly is challenging Judge Morris' standing analysis—namely, whether the Trustee has standing as an assignee of claims to sue Gellatly. Gellatly asserts that the assignment of the Notes from Wallkill to the Trustee was conditional and revocable, which means that the Trustee is in fact seeking to enforce claims on behalf of Wallkill. (ECF No. 2 ¶ 27.) However, "[u]sing § 1292(b) to resolve questions concerning the application of law to facts is problematic for the termination of a litigation, as such questions 'are generally not suitable for certification under § 1292(b).'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 532 (S.D.N.Y. 2014) (quoting *Freeman v. Nat'l Broadcasting Co., Inc.*, No. 85-cv-3302 (LBS), 1993 WL 524858, at *1 (S.D.N.Y. Dec. 15, 1993)). Gellatly has "not raised any controlling legal issues, but [is] merely displeased with [the Bankruptcy Court's] conclusion that [the Trustee] was entitled to summary judgment because there was no triable issue of fact that warranted sending the case to a jury." *Estevez-Yalcin v. The Children's Vill.*, No. 01-cv-8784 (KMK), 2006 WL 3420833, at *3 (S.D.N.Y. Nov. 27, 2006). "But 'a litigant, who is dissatisfied with a court ruling, may not utilize § 1292(b) as a means for securing early resolution of disputes concerning whether the [Bankruptcy Court]

properly applied the law to the facts.'" *Id.* (quoting *In re Winstar Comm.*, No. 01-cv-3014, 2006 WL 1559251, at *2 (S.D.N.Y. June 7, 2006)).  Gellatly's failure to meet the first factor of the test requires denial of his motion for leave to appeal the December Order.

## CONCLUSION

For the foregoing reasons, Gellatly's motion for leave to appeal is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 2 and close the case.

Dated:   July 18, 2016
        White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge